## RAILROAD COMMISSIONERS v. RAILROAD COMPANY.

1. For a failure by a railroad company to adopt the suggestions of the railroad commissioners as to improvements in station houses, under section 1457 of the General Statutes, no penalties are prescribed, and no mode of enforcement provided. Therefore no right of action is given to the railroad commissioners against the railroad company for such their failure, but the remedy is an action by the State, to be brought by the attorney general upon the request of the railroad commissioners, to recover the penalty provided in section 1539.
2. Whether the railroad commissioners have the power to require a railroad company to establish and maintain a station house to be placed under a competent agent, raised but not determined.

Before HUDSON, J., Richland, November, 1885.

The case is fully stated in the Circuit decree, which was as follows:

Upon the line of the Spartanburg, Union & Columbia Railroad, now maintained and operated by the Columbia & Greenville Railroad Company under a lease, is a station called "Shelton," at which there was a very good depot for freight and passengers until the building was burned by the Federal army in February, 1865. Since that time there has been no building for freight and passengers, but for many years only a platform for freight and a box car as a place of business for the agent.

Recently citizens in the vicinity made complaint to the railroad commission of the great want of suitable accommodations. This complaint was referred by the commission to the defendant company, with a request to have the evil remedied. Thereupon the company converted "Shelton" into a "flag station," and discontinued it as a regular station, removing the agent and effects elsewhere. The commission thereupon, after due notice to the company, proceeded to investigate the alleged grievance of the citizens and heard testimony upon the subject, the company not sending any representative to attend the court of inquiry. The investigation resulted in the following judgment of the board, viz.: "After a careful consideration of the information in their possession, the board decides that the box car and shed there in use are insuffi-

cient for the business of that place; and, in the judgment of the railroad commission, it is reasonable and expedient, in order to promote the security, convenience, and accommodation of the public, that a depot building or station house and passenger rooms, suitable for the business and travel there, should be erected and placed under a competent agent."

Under section 1457 of General Statutes, the commission gave written notice of this judgment to the company, and requested that it be carried into effect. This was not done; and more than sixty days having elapsed, and having no power under the law to enforce the judgment, the commission instituted the present action in this court, seeking to have said judgment enforced. This action is resisted by the railroad company upon the grounds: 1st. That the complaint does not state facts sufficient to constitute a cause of action, and that this court is without the power and jurisdiction to compel compliance with the said request of the said commission. 2nd. That the said commission is without authority to order the erection of depots on the line of their road. 3rd. That by the nature and provisions of the lease of said road for ninety-nine years, it can be terminated on sixty days' notice, and will be so terminated January 1, 1886.

An examination of the railroad law of the State, including section 1457, satisfies me that the railroad commission has not power to compel a railroad company to build depots, nor to restrain the conversion of a regular station into a "flag station." Such changes are so essentially within the discretion and control of the company, that to deprive it of this power would be to rob the company of the control of its property and destroy its vitality. No railroad corporation could live if it were compellable to erect depots and maintain stations at the dictation and command of a railroad commission.

I find no such power conferred upon the board of commissioners in section 1457 of the General Statutes, nor in any other section of that chapter. In section 1457 the board can *suggest* to a railroad company to make enlargements and improvements in stations and station houses; and if the same be not made within sixty days, "they may take such legal proceedings as they may deem expedient, and shall have authority to call upon the attorney gen-

eral to institute and conduct such proceedings." But no fine, no penalty, nor forfeiture, is imposed upon the railroad company by the act for failing to carry into effect the suggested improvements.

Admitting, therefore, for the sake of the argument, that the facts bring the present action fully within section 1457, what, we ask, shall be the judgment of this court? The legislature has provided no mode of proceeding, no measure of damages, no mode of redress. Surely, it cannot be said that *mandamus* is the appropriate remedy to compel a corporation to carry into effect the *suggestions* of a railroad commission. The legislature has not prescribed it, and this court, with a proper appreciation of this high prerogative writ, will not volunteer to resort to it as a convenient mode of supplying a remedy which the legislature has not prescribed, and, perhaps, for wise reasons. The powers and duties of the railroad commission are strictly statutory, and ample enough. The court is not at liberty to enlarge them; and until the legislature shall prescribe an appropriate mode of legally enforcing these suggestions of the board of railroad commissioners, this court is powerless to do so under any of the established forms of judgment.

It is therefore ordered, adjudged, and decreed, that the complaint be dismissed.

From this decree the plaintiff appealed upon several exceptions, not necessary to be stated.

*Mr. C. R. Miles, Attorney General,* for plaintiff.

*Mr. J. C. Haskell,* contra.

March 19, 1887. The opinion of the court was delivered by

MR. JUSTICE MCIVER. [Omitting the statement.] Under the view which we take of this case, it will be not only unnecessary, but perhaps improper, for us to consider the questions mainly argued at the bar, for the reason that the proper parties for the adjudication of such questions are not now before the court, and in no view of the case can this action be maintained by the present plaintiffs.

It is conceded that the action is based upon section 1457 of the General Statutes, which reads as follows: "Whenever, in the

judgment of the railroad commissioners, it shall appear that repairs are necessary upon any such railroad, or that any addition to the rolling stock, or any enlargement of or improvement in the stations or station houses, or any modification in the rates of fare for transporting freight or passengers, or any change in the mode of operating the road and conducting its business, is reasonable and expedient in order to promote the security, convenience, and accommodation of the public, they shall give information in writing to the corporation of the improvements and changes which they adjudge to be proper ; and if the said company shall fail, within sixty days, to adopt the suggestions of said commissioners, they shall take such legal proceedings as they may deem expedient, and shall have authority to call upon the attorney general to institute and conduct such proceedings." Now, whether this section confers upon the railroad commissioners the power to require a railroad company to establish and maintain stations wherever they may see fit, and to employ competent agents to manage the same, or whether they can restrain a company from discontinuing a station or from converting a regular station into a flag station, are all questions which we do not propose now to consider. For, even assuming, for the purposes of this case only, that the railroad commissioners have all this power to the fullest extent claimed, yet we do not think the present action can be maintained by them.

It is clear that no penalties are provided in section 1457 for a violation of any of its provisions, nor is there any specific mode of enforcing them prescribed therein. From this it is argued, with much force, by the attorney general, that the court, under its general equity powers, may enforce compliance with the provisions of the section by mandatory injunction, or other appropriate remedy, upon the ground that there is no plain and adequate remedy at law. Without undertaking now to determine whether this position can be sustained, it seems to us that the ground upon which it rests, to wit, that there is no plain and adequate remedy at law, is without proper foundation to support it. While it is true that there is no specific penalty, and no particular mode of proceeding prescribed for the violation of its provisions, or for carrying the same into effect, *in that section,* yet we do find in section 1539 of the same chapter of the General Statutes that

this omission has been supplied. So much of the last named section (1539), as amended by the act of December 21, 1882 (18 *Stat.*, 18), as relates to this matter, reads as follows: "Each and every act, matter, or thing in this act declared to be unlawful is hereby prohibited; and in case any person or persons as defined in this act [and as so defined expressly embracing corporations], engaged as aforesaid, * * * shall omit to do any act, matter, or thing in this act required to be done, or shall be guilty of any violation of the provisions of this act, such person or persons shall, where no specific penalty is hereinbefore already provided for such violation, * * * for each offence forfeit and pay a penalty of not less than one thousand dollars, to be recovered by the State by action in any Circuit Court aforesaid, to be brought by the attorney general upon the request of the railroad commissioners."

It is quite certain that the railroad commissioners have no powers except such as have been conferred upon them by statute, and assuming, as we have done, without, however, deciding the point, that section 1457 of the General Statutes does confer upon those officers the power to require a railroad company to establish and maintain a station house, to be placed under a competent agent, it would seem to follow that a refusal to comply with such requirement would be a violation of the terms of the act. It would be an omission to do an act required by the act to be done, for it is obvious that the whole legal force of the requirement is derived from the terms of the statute and not from the mere will of the railroad commissioners. But for the provisions of the statute, the requirement would be *brutum fulmen*, and a refusal to comply would be no violation of the law.

Hence, if the statute does authorize the railroad commissioners to make such requirement, it follows, necessarily, that a refusal to comply therewith becomes unlawful because of the terms of the statute, and is a "violation of the provisions of this act." This being so, inasmuch as section 1457 provides for no specific penalty for a violation of its provisions, the very case is presented which was designed to be covered by section 1539—"where no specific penalty is hereinbefore already provided for such violation." Hence, it follows that this action cannot be maintainable by the railroad commissioners, and that the defendant company if liable

at all to the penalty imposed by section 1539, it can only "be recovered *by the State* by action in any Circuit Court aforesaid, to be brought by the attorney general upon the request of the railroad commissioners," as provided in said section. Upon this ground, therefore, without considering or deciding the point upon which the Circuit Judge rested his judgment, we are of opinion that the judgment dismissing the complaint was correct.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.