# WABASH RAILROAD COMPANY *v.* RAILROAD COMMISSION OF INDIANA.

[No. 21,652. Filed June 30, 1911. Rehearing denied November 3, 1911.]

1. RAILROADS.—*Highway Crossings.*—*Duties.*—A railroad company that constructs its track over a highway must restore such highway to its former condition of usefulness and safety and so maintain it; and if this cannot be done by a grade crossing, the company must do it by constructing its tracks over or under such highway, or by constructing the highway over or under its tracks. p. 436.

2. RAILROADS.—*Highway Crossings.*—*Mandamus.*—While a railroad company is required, upon the order of the proper authority, to construct a useful and safe highway crossing, the manner of con-

structing said crossing is within its discretion; but if the mode chosen fails properly to execute the duty, mandamus lies to compel such company to construct a crossing that conforms to legal requirements.   p. 436.

3.   RAILROADS.—*Highway Crossings.—Action to Enforce Making of. —Parties.—Trustees.—*A township trustee may maintain an action to compel a railroad company to construct and maintain a proper highway crossing.   p. 437.

4.   RAILROADS.—*Commissions.—Powers.—*A railroad commission has only such powers as are expressly granted by statute.   p. 438.

5.   RAILROADS.—*Commissions.—Suits to Compel Companies to Establish Highway Crossings.—*Under §5553 Burns 1908, subd. b, Acts 1907 p. 454, §19, providing that the railroad commission shall investigate any defective highway crossings that endanger the safety of persons on the trains and shall recommend changes, and that if such changes are not made as directed the commission "may file a bill in equity * * * to require compliance with its order," and §5530 Burns 1908, Acts 1907 p. 454, §17, requiring the commission "to enforce" all laws regulating railroads, the railroad commission may institute a suit to compel a railroad company to construct a proper highway crossing.   pp. 438, 441.

6.   RAILROADS. — *Killing Stock. — Negligence. — Statutes. — Police Power.—*Under the police power railroad companies are required to fence their tracks, in order to lessen the danger of collision with animate objects, with the consequent peril to those using such railway; and companies failing thus to safeguard their tracks may be compelled to pay for animals killed thereon, regardless of the question of negligence.   p. 440.

7.   RAILROADS.—*Highway Crossings.—Suits to Enforce Construction of.—Complaint.—*A complaint by the railroad commission alleging that it had ordered defendant railroad company to construct a proper highway crossing, that defendant refused, and showing the facts making it the company's duty to construct such crossing, is sufficient.   p. 441.

From Lagrange Circuit Court; *James S. Dodge,* Judge.

Suit by the Railroad Commission of Indiana against the Wabash Railroad Company.   From a decree for plaintiff, defendant appeals.   *Affirmed.*

*Stuart, Hammond & Simms* and *Merrill & Duff,* for appellant.

*John W. Hanan, Louis B. Ewbank* and *J. Frank Hanan,* for appellee.

MONKS, J.—It appears from the record that appellee in 1909 investigated the grade crossing of appellant over the highway running north and south through the town of Topeka, Lagrange county, Indiana, and made an order recommending that appellant within ninety days commence and complete the work necessary to separate the grade of said railroad and the grade of said highway at said crossing, and that this separation be made by constructing said highway under the grade of said railroad, so that "an overhead clearance of at least fourteen feet shall be provided, and so that the roadway so constructed shall be fifteen feet on each side of the center thereof."

A copy of this order was served on appellant September 3, 1909. Appellant failed and refused to construct said crossing and to obey said order of appellee. On December 22, 1909, appellee commenced this suit to compel appellant to construct said highway crossing as requested in said order.

It appears from the complaint that appellant owns and controls a line of railroad extending from the city of Detroit, Michigan, to the city of Chicago, Illinois; that said line of railroad runs across Eden and Clear Spring townships in Lagrange county, Indiana, and through the village of Topeka, which lies partly in Eden township and partly in Clear Spring township.

It is alleged in the complaint, among other things, that plaintiff shows the court that defendant is now operating said line of railway, and is, and for a long time has been, engaged in running upon and over said railway through said village of Topeka a large number of trains every day; that it now runs, and for a long time past has run, over its said railway, through said village of Topeka, twenty trains within every twenty-four hours; that under defendant's present schedule it operates over said road through said village five passenger-trains every day at a speed of from forty to sixty miles an hour, without stopping any of said

trains at said village, and ten freight-trains at the rate of thirty miles an hour, without stopping any of said trains at said village. Plaintiff shows the court that upon and along the section line extending north and south between said section thirty-one, township thirty-six north, range nine east, and section thirty-six, township thirty-six north, range eight east, extending north and south through the said village of Topeka and across defendant's said railroad and right of way is a public highway, which is the main thoroughfare for travel between the cities of Lagrange and Ligonier, and for all of the surrounding country in passing from north of said railroad track to the village of Topeka and the town of Ligonier, and for all of the surrounding country south of said railroad track to the village of Topeka and the town of Lagrange; that such highway is used every day by travelers driving many teams and vehicles; that said highway constitutes the sole means of communication between the north part and the south part of the village of Topeka, and is the only street in said village that crosses defendant's railroad track; that said village of Topeka has a population of about seven hundred inhabitants of whom about five hundred fifty live north of said defendant's railroad track, and about one hundred fifty live south of said railroad track; that in said village, on the south side of said railroad track, are located a grist-mill which every year buys grain of the value of $5,000, and elevators, which every year buy and ship from said point grain of the value of $200,000; that said grain is hauled in from the surrounding country, and in order to reach said grist-mill and elevators the owners thereof are compelled to haul it across defendant's said railroad track; that in said village of Topeka are stockyards, from which there are shipped each year animals to the value of $125,000, which animals are brought in from the surrounding country by the owners thereof, and to reach the stockyards they must be hauled or driven along said highway across said railroad;

that at said village there is located a creamery, which each year buys from the producers in the surrounding country cream and butter fat of the value of $40,000, all of which the producers are compelled to haul upon said highway across said railroad; that there is a coal and lumber yard at said village, which sells each year to consumers in the surrounding country coal and lumber of the value of $30,000, all of which the owners are compelled to haul upon said highway across said railroad track; that there is in said village a schoolhouse, at which there is a daily attendance of 200 children during eight months in each year, and that of these children more than one-third are compelled to pass along said highway across said railroad track to reach said schoolhouse and many of them live in the country at a distance from the schoolhouse, and are compelled twice each day to drive over said railroad crossing upon said highway in covered vehicles; that in said village of Topeka there is a library building containing a lecture parlor, in which are conducted a lyceum and lecture course, to which a large number of persons resort twenty-five times during each year, and they are compelled to cross said railroad track in the night, in passing to and from their respective homes; that said village contains a theatre and fifteen stores, which supply entertainment and merchandise for all the surrounding country, and are visited by a large number of persons every day, who are compelled to cross said railroad track on said highway in passing to and from their respective homes; that said crossing is used for travel upon said highway across said defendant's railroad more than five hundred times every day by persons who necessarily pass over said railroad in going from one part of the village of Topeka to another part thereof; that from said crossing to the next highway crossing over said railroad on the east is a distance of one mile; to the next highway crossing over said railroad on the west is a distance of one mile, and that in the entire distance of two miles between said crossings there is no other highway

or means whatever by which persons north of defendant's railroad can pass to the south side thereof, or by which persons south of said railroad track can pass to the north thereof, except along said highway and over said crossing in said village of Topeka, on the aforesaid highway; that defendant's depot stands on the north side of said railroad track, 124 feet west of the center of said highway, and the depot platform extends for a distance of seventeen feet onto said highway; that defendant's switch yards are near said highway, to wit, 500 feet west of said crossing, and defendant's five daily trains, west bound, that stop at said town of Topeka, are stopped on said railroad in such a manner that they extend across said highway and obstruct travel thereon; that defendant at least once every day stops a local freight-train upon said crossing, and obstructs it from fifteen to thirty minutes; that defendant continuously obstructs many teams and wagons, together with their drivers, seeking to travel on said highway over said crossing; that defendant has neglected and refused, and now neglects and refuses, to restore said highway intersected by its road to its former state, or to such a sufficient degree that its usefulness would not be impaired, and to construct its road upon and across said highway in such manner as not to interfere with the free use thereof, and to afford security for life and property; that defendant has constructed and now maintains its said railroad and tracks in, upon and across said highway on an embankment ten feet above the level of said highway on either side; that it has constructed and now maintains a steep grade leading up from said highway on either side to the top of said embankment, and to the crossing over its said track; that said highway is sixty feet wide; that defendant has built and now maintains a crossing twenty feet wide over its said railroad, and an embankment and grade leading up thereto from either side; that the top of said embankment is higher than the eyes of a person riding

in a wagon or buggy upon and along said highway, and so high that a person driving along said highway toward said crossing cannot see a traveler driving toward said crossing upon the highway from the opposite direction, until he has reached the top of said embankment, and by reason of such fact, and because of the narrow crossing, travelers frequently meet each other at the top of said embankment upon defendant's track in such a way that it is very difficult for their vehicles to pass, and they are compelled to stop and turn to one side and delay for a long time upon said railroad track; that the approaches and grades on said highway that lead to said crossings on either side of defendant's railroad track, are so steep that teams of horses drawing loaded wagons are liable to become stalled, and unable to pull the loaded wagons across said track, and are thereby compelled to stop for a long time upon said track; that the view of said crossing is obstructed by many buildings on each side of the railroad track near said highway; that defendant has constructed and is now using a large number of side-tracks, which extend from a point twenty rods west of said crossing, and on both sides of the main track for a long distance west, and these side-tracks are used by said defendant for storing freight-cars; that said cars are allowed to stand upon said side-tracks for months at a time, thereby entirely obstructing the view of defendant's railroad and of trains approaching from the west on said railroad; that there is an amount of travel upon and along said highway over said railroad at said crossing which needs, and will use, if provided therewith, a traveled track thirty feet wide; that said highway is frequently used by travelers with vehicles twelve feet high; that all of the travel in and along said highway could be fully accommodated by an undergrade crossing beneath said railroad, at a level of not more than four feet below the level of said highway as it now exists on either side of said crossing; that defendant's railroad could be so constructed as to pass over said high-

way at a height above it sufficient to permit travelers and vehicles to drive beneath it; that an opening in said embankment of the full width of thirty feet and of the full heighth of fourteen feet would amply accommodate all of the travel on said highway, and permit all persons using said highway to pass from one side of said railroad track to the other side thereof without difficulty or danger; that all of the travel on said highway now passes over a crossing thirty feet in width, and there is such an amount of travel on said highway as will make continuous use of a thirty foot roadway; that an opening beneath the railroad track fourteen feet in height is necessary to permit loaded wagons, covered vehicles, traction engines and separators to pass through; that for a mile east of said highway crossing defendant's railroad track runs at a heavy down-grade to a point near said highway crossing, and that from that point it runs westward at a very slight grade, and is nearly level; that said track at said highway crossing is two feet lower than a direct line drawn from the top of the present grade of defendant's track one mile east of said crossing to a point at the height of the present grade of defendant's track one mile west of said crossing, so that to make a uniform grade for said track through and across said sections thirty-one and thirty-six, and by making said track of a uniform grade through and past said village of Topeka and said sections thirty-one and thirty-six, defendant's track might be raised two feet above its present grade without any injury thereto.

Plaintiff shows the court that a public ditch extends from a point near said crossing at a depth below said highway, sufficient to afford drainage for said highway and such an undergrade crossing beneath said railroad track, and that the bottom of said ditch is ten feet below the level of said highway.

Appellant demurred to said complaint for the following reasons: (1) It does not state facts sufficient to constitute a cause of action; (2) the court has no jurisdiction of the

subject-matter of the action; (3) the plaintiff has not legal capacity to sue.

The demurrer was overruled and exceptions saved as to each specification. Appellant refused to plead over, electing to stand on its demurrer. Thereupon the court entered a decree in favor of appellee, ordering appellant "immediately to construct a sufficient undergrade crossing" as prayed for by appellee.

Appellant filed a motion to modify said decree, for the reasons (1) that the complaint does not state facts sufficient to constitute a cause of action; (2) that plaintiff has no authority under the law to maintain this cause of action, nor is it entitled to such decree; (3) that said decree is not authorized under the facts stated in the complaint, which motion was overruled and exceptions saved.

It is well settled in this State that the right of a railroad company to cross a highway with its tracks carries with it

1. the duty on the part of the company to restore the highway to, and keep it in its former condition of usefulness and safety, and if this cannot be done by a grade crossing, the company must do it either by constructing its tracks over or under the highway or the highway over or under its tracks. 3 Elliott, Railroads (2d ed.) §§1102, 1105, 1107, 1111, 1112; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189, and authorities cited; *Chicago, etc., R. Co.* v. *Luddington* (1910), 175 Ind. 35; *New York, etc., R. Co.* v. *Rhodes* (1909), 171 Ind. 521, 524; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237; *Cincinnati, etc., R. Co.* v. *City of Connersville* (1908), 170 Ind. 316, 323, 324; *State, ex rel.,* v. *St. Paul, etc., R. Co.* (1906), 98 Minn. 380, 28 L. R. A. (N. S.) 298, 120 Am. St. 581; *Greenup County* v. *Maysville, etc., R. Co.* (1889), 88 Ky. 659, 661, 11 S. W. 774; *City of Moundsville* v. *Ohio River R. Co.* (1892), 37 W. Va. 92, 16 S. E. 514, 20 L. R. A. 161; *Baltimore, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 510, 517–521.

While under the law of this State the railroad company may have a discretion as to the manner of performing this duty of providing a safe and useful crossing, it is 2. a ministerial discretion. "The act must be done, and there is no discretion whether it will or will not do it. If the mode chosen fails to execute the duty, though the company claims that it is adequate, the law by mandamus will compel a proper performance, pointing out in the writ the point of failure, and what must be done so that there be no further failure." *City of Moundsville* v. *Ohio R. Co., supra.* See, also, 3 Elliott, Railroads (2d ed.) §§1106, 1111; 1 Rorer, Railroads 551; 8 Am. and Eng. Ency. Law (2d ed.) 365, 370, 374; 19 Am. and Eng. Ency Law (2d ed.) 873, 874; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189, 191; *Evansville, etc., R. Co.* v. *State, ex rel.* (1898), 149 Ind. 276; *Cummins* v. *Evansville, etc., R. Co.* (1888), 115 Ind. 417; *Greenup County* v. *Maysville, etc., R. Co., supra; People, ex rel.,* v. *Dutchess, etc., R. Co.* (1874), 58 N. Y. 152; *State, ex rel.,* v. *St. Paul, etc., R. Co.* (1886), 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313; *State, ex rel.,* v. *Minneapolis, etc., R. Co.* (1888), 39 Minn. 219, 39 N. W. 153; *Commonwealth* v. *Proprietors, etc.* (1854), 2 Gray (Mass.) 339, 352, 353.

It is therefore clear that it was the duty of appellant to place and keep said highway crossing in such a condition as not to interfere with the use thereof by the public. It is equally clear, from the authorities before cited, that if said railroad company has restored said highway in an improper manner, but contends that it has done its duty in this respect, it is for the court to determine whether or not appellant has done its duty, and if not, to direct how it shall be done so it may not again fail. *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189; *Baltimore, etc., R. Co.* v. *State, ex rel., supra; Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237; *Vandalia R. Co.* v *State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370; *Evansville, etc., R. Co.* v. *State, ex rel., supra.*

Appellant contends, however, that the action must 3. be brought by the township trustee when the crossing is without the limits of a city or incorporated town, and by the city or town when the crossing is within the limits of such city or town. We agree that the action may be so brought, and appellee, as we understand, so concedes; but appellee contends that the action may also be brought by the railroad commission of the State, and in support of such contention cites §§5550, 5553, subd. b, Burns 1908, Acts 1907 p. 454, §§17, 19.

A railroad commission is a tribunal unknown to the common law, and possesses only such powers as are conferred upon it by statute. 2 Elliott, Railroads (2d ed.) §§675, 4. 682-685; 23 Am. and Eng. Ency. Law (2d ed.) 653, 661; 33 Cyc. 47, 48; *Board, etc., v. Oregon R., etc., Co.* (1888), 17 Or. 65, 75-77, 19 Pac. 702; *State, ex rel., v. Yazoo, etc., R. Co.* (1905), 87 Miss. 679, 40 South. 263; *State, ex rel., v. Fremont, etc., R. Co.* (1888), 23 Neb. 117, 126, 36 N.W. 305; *Merrill v. Boston, etc., Railroad* (1884), 63 N. H. 259, 264; *Eastern Railroad, etc., v. Concord, etc., Railroad* (1866), 47 N. H. 108, 111-112; *Railroad Com. v. Railroad Co.* (1885), 26 S. C. 353, 357, 2 S. E. 127; *Trustees, etc., v. State Board, etc.* (1893), 55 N. J. L. 436, 27 Atl. 809; *Neal v. Mortland* (1892), 85 Me. 62, 26 Atl. 994; *Pittsburgh, etc., R. Co. v. Railroad Com.* (1908), 171 Ind. 189, 208; *State, ex rel., v. Indianapolis Union R. Co.* (1903), 160 Ind. 45, 60 L. R. A. 831. It is evident, therefore, that unless the legislature has conferred on the railroad commission authority to do so, it cannot maintain this action.

It is clear, under the railroad commission act, that whenever a defective crossing endangers the security of persons traveling on trains, it becomes the duty of the rail- 5. road commission to cause an investigation to be made, and to make a report to the manager or superintendent of the railroad company, recommending such reasonable changes as are, in the opinion of the commission, necessary

to remedy the defects, and set out specifically a reasonable time within which the improvements shall be made by the railroad company. And if they are not so made within the time specified, the commission, if it deem it best to do so, may file a bill in equity in some circuit or superior court of the State having jurisdiction of the carrier, to require compliance with its order. §5553, *supra.*

The averments of the complaint, the truth of which is admitted by appellant's demurrer, show a condition at said highway crossing that was a constant menace to the security of persons riding on appellant's trains, as well as to persons traveling on the highway at said crossing. These facts show a danger of collisions between appellant's trains and the users of said highway. Every such collision is fraught with danger to the persons carried on appellant's trains and to said travelers on the highway. Even if, as appellant contends, the railroad commission's act does not inure to the benefit of the general public, but simply to the public using the railroad, it is clear that the condition set out in appellee's complaint was a menace to the security of the employes of, and the public traveling on, appellant's trains, which it was the duty of appellee to investigate and to recommend such reasonable changes at said crossing as would afford security for life and property, and would not interfere with the free use of said highway.

Not only does §5553, *supra,* provide that if the railroad company refuses to make said changes the commission "may file a bill in equity * * * to require compliance with its order," but §5550, *supra,* provides that "the commission is hereby authorized and required to enforce * * * such other laws of this State as shall prescribe the duties and obligations and regulate the conduct of the carriers subject hereto in their dealings with the public and each other as common carriers of passengers and property in this State, and to enable the commission so to do it is hereby given full power and authority to institute and prosecute in its name

any appropriate action at law, or suit in equity, in any circuit or superior court of this State, against any such carrier to compel it to observe the requirements of this act, and all other laws of this State, and the orders of the commission duly made pursuant to this act, or any other law of this State." We are not required to decide whether the "duties and obligations" mentioned in said section relate to the general public or to the public using appellant's railroad, as the result of this case would be the same in either event.

It has been held that the law making a railroad company liable for the value of animals killed or injured, without regard to the negligence of the owner thereof, where the railroad company had failed properly to fence its right of way, is a proper police regulation, not because of the abstract right of the owner of the animal to recover therefor, but because it is an effectual mode of securing the safety of persons riding on the railroad company's trains by preventing "cars from coming in collision with animate objects, involving not only the destruction of such object, but most likely a great loss of human life." *New Albany, etc., R. Co.* v. *Maiden* (1859), 12 Ind. 10. See, also, *New Albany, etc., R. Co.* v. *Tilton* (1859), 12 Ind. 3, 5, 6, 74 Am. Dec. 195; *Indianapolis, etc., R. Co.* v. *Guard* (1865), 24 Ind. 222–234, 87 Am. Dec. 327; *McKinney* v. *Ohio, etc., R. Co.* (1864), 22 Ind. 99, 100; *Indianapolis, etc., R. Co.* v. *McKinney* (1865), 24 Ind. 283, 284–285; *Indianapolis, etc., R. Co.* v. *Marshall* (1866), 27 Ind. 300; *Jeffersonville, etc., R. Co.* v. *Dunlap* (1868), 29 Ind. 426, 428; *Indianapolis, etc., R. Co.* v. *Parker* (1868), 29 Ind. 471; *Bellefontaine R. Co.* v. *Reed* (1870), 33 Ind. 476, 479; *Toledo, etc., R. Co.* v. *Cary* (1871), 37 Ind. 172; *Baltimore, etc., R. Co.* v. *Johnson* (1877), 59 Ind. 188, 190; *Cincinnati, etc., R. Co.* v. *Hildreth* (1881), 77 Ind. 504, 506; *Indianapolis, etc., R. Co.* v. *Townsend* (1857), 10 Ind. 38; *Clark's Admx.* v. *Hannibal, etc., R. Co.* (1865), 36 Mo. 202, 219; 3 Elliott, Railroads (2d ed.)

§§1182, 1190-1192; Thornton, Railroad Fences §§14, 15, p. 25; 33 Cyc. 312; 12 Am. and Eng. Ency. Law 1066.

The rule declared in the cases just cited is equally applicable to the present one, as it can scarcely be contended that collisions with the users of said highway crossing will be less dangerous to persons riding on appellant's trains than collisions with animals which are on its tracks by reason of a defective fence. In both cases the danger to the persons aboard its trains arises from appellant's failure to do its legal duty.

It is clear that whether the railroad commission has authority to order appellant to put this crossing in a safe condition for the use of the public traveling on said 5. wagon roadway or not, it became its duty under §§5550, 5553, *supra,* to require appellant to make such reasonable changes in said crossing as were in its opinion necessary to make it safe for persons riding on appellant's trains, and when appellant refused to comply with said order, to file its bill in equity to compel compliance with it.

Appellant also contends that the order made by the railroad commission was not a reasonable and practicable one under the facts alleged in the complaint. 7. cable one under the facts alleged in the complaint. The facts alleged clearly show that it was.

It follows that the court did not err in overruling the demurrer to the complaint or the motion to modify the judgment.

Finding no available error, the judgment is affirmed.