IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1921, AND MAY AND
NOVEMBER TERMS, 1922, IN THE ONE HUNDRED
SIXTH AND ONE HUNDRED SEVENTH
YEARS OF THE STATE.

---

CINCINNATI, INDIANAPOLIS AND WESTERN RAILROAD
COMPANY *v.* BOARD OF COMMISSIONERS
OF FAYETTE COUNTY, ET AL.

[No. 23,622. Filed March 29, 1922.]

1. COUNTIES.— *Board of Commissioners.— Jurisdiction.— Void
   Acts.—Collateral Attack.*—The board of county commissioners
   is a tribunal of limited jurisdiction, and any acts done by it in
   excess of its jurisdiction are void, and will be so held even
   when collaterally attacked.  p. 6.

2. COUNTIES.—*Board of Commissioners.—Acts Unauthorized by
   Statute.—Validity.*—Any act of the board of county commis-
   sioners not within the powers conferred upon it by statute is
   wholly void.  p. 6.

3. RAILROADS.— *Highway Crossings.— Construction of Under-
   grade Crossings.—Authority of Board of County Commission-
   ers to Order.—Statutes.*—In improving a highway under §7711a
   Burns' Supp. 1918, Acts 1915 p. 680, the board of county com-
   missioners is without jurisdiction to order and establish an
   undergrade crossing through a railroad embankment beneath
   the tracks without the consent of the company, and such order
   is void; the statute (§5195, cl. 5, Burns 1914, §3903 R. S. 1881)
   giving the railroad company the right in the first instance, to
   choose the kind of crossing to be constructed, subject to be
   controlled by a court of superior jurisdiction in an action to
   compel the railroad company to perform its duty.  p. 6.

4. HIGHWAYS. — *Improvement.* — *Character of Improvement.* — *Rights of Petitioners.*—*Statutes.*—In view of §§7713, 7715-7717 Burns 1914, Acts 1905 p. 521, and §7711a Burns' Supp. 1918, Acts 1915 p. 680, §§7712, 7719 Burns' Supp. 1918, Acts 1915 p. 644, relating to the establishment and improvement of highways, the question of what improvement shall be made, and whether along an existing highway, or along the line of a new one laid out and established for that purpose, is exclusively for determination by the qualified freeholders and voters of the township or townships affected, and jurisdiction is conferred by filing a petition signed by the required number of freeholders and voters, and may be taken away by an adverse vote of the township or townships affected, or, in event the improvement is not submitted to a vote, by a sufficient remonstrance, and except as petitioned, neither the viewers nor the board of commissioners have any power to lay out, establish or construct an improvement. p. 11.

5. RAILROADS.—*Crossings under Tracks.*—*Authority of Board of Commissioners.*—*Petition.*—*Relocation of Highway.*—*Statutes.* —In a highway proceeding, the real purpose of which was to establish a crossing where the highway would pass under the railroad, in the absence of a petition for a relocation of the existing highway the viewers had no authority to lay out the highway improvement on a new route, and the board of county commissioners was without jurisdiction to order the highway established and opened at the place of the proposed undergrade crossing, without the consent of the railroad company, and without an order of the Public Service Commission. p. 12.

From Fayette Circuit Court; *Fred C. Gause,* Special Judge.

Action by the Cincinnati, Indianapolis and Western Railroad Company against the board of commissioners of Fayette county and others. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*J. W. Fesler, Harvey J. Elam, Howard S. Young, Allen Wiles* and *Clarence S. Roots,* for appellant.

*W. E. Sparks, E. R. Himelick* and *Hyatt L. Frost,* for appellees.

EWBANK, C. J.—This was an action by the appellant to enjoin certain of the defendants, as constituting the

board of commissioners of Fayette county, and a road contractor, from proceeding to open an undergrade crossing for a highway through appellant's railroad embankment at a new location, and from improving such highway by grading and graveling it. The second amended and supplemental complaint was in a single paragraph. A demurrer by each of the appellees for the alleged reason that it did not state facts sufficient to constitute a cause of action was sustained to this complaint and the appellant excepted, and assigns these rulings as error.

The substance of the complaint is as follows: That seventy-six persons, describing themselves as freeholders and voters of Connersville township in said Fayette county, filed a petition with the board of commissioners, asking that a certain described part of a designated public highway, beginning at a point named, and running "thence westwardly * * * following the old Nickle Plate highway" to a point named, and "thence westwardly, bearing south and following what is known as the Rees road," to the township line, should "be improved" under the act of 1905 and amendments thereto, "which provide for the grading, draining and paving of highways by taxation." It alleged that the part of the highway sought to be improved was less than three miles in length, extended from an existing improved highway to the township line, and was part of a United States rural mail route, that it was all in one township and that the city and town situated in that township each had less than 30,000 inhabitants.

And said petition closed with the statement that "your petitioners recommend that said part of said public highway be paved to the width of twelve feet from the beginning to the terminus thereof, as herein set forth." Nothing was said in the petition about laying out and establishing a new highway, or straightening

or otherwise changing the course of the highway sought to be improved, nor was there any description of its course, except as above stated, and further by naming the two sections across which it ran.

The county auditor published the petition at length, with a notice that it had been filed in his office and was set for hearing on May 1, 1916, which was all the notice that was ever given to appellant.

A little more than half a mile west of the beginning point as named in the petition, the road now turns sharply to the northwest and crosses appellant's railroad track at grade, and then turns west again, in the same general direction that the railroad runs, as shown by the plat hereinafter set out. At this point there is a railroad station, but it is not an incorporated town or city. A quarter of a mile further west the railroad crosses Williams creek on a bridge approached by high embankments. The highway now follows along the creek a short distance, then crosses it and follows the course of one of its tributaries. The petition was referred to viewers, who reported in favor of improving a highway having the same termini as given in the petition but which followed a course different from the line of the existing highway for nearly half of its length. At the place where the road now turns northwest and crosses appellant's railroad at grade, the specifications reported by the viewers provided that it should continue toward the southwest, parallel with the railroad, about 230 feet, to where the railroad is laid on a high embankment, and should there turn to the northwest, across the right of way, cutting through the embankment beneath the railroad track, and then, turning southwest, should run 1,000 feet in a new location, and after crossing the line of the existing highway should continue in a new location almost a quarter of a mile before returning to the line of the existing highway, which should be again

departed from for nearly sixty rods of the route near the west end.

And the complaint alleged that there were a number of improper provisions in the specifications for building the road, the advertisement for bids and the contract entered into by the board of commissioners and the road contractor.

It alleged that by reason of the facts stated no jurisdiction was obtained of the subject-matter, or of the land affected, or of the parties interested; that if the railroad embankment shall be removed and a bridge substituted such change will cost $10,000; that the appellees threaten to, and unless restrained by an injunction will enter upon appellant's right of way, remove its railroad embankment, and render impossible the operation of trains thereon, and will tear up the existing highway, and order an assessment fixed on appellant's property which will cloud its title thereto. But it is alleged that the Public Service Commission of Indiana has not ordered the grades of the highway and railroad to be separated, and that said action of the board of commissioners was had without any consent of the Public Service Commission of Indiana, and without an application to said body for its consent, and that it has not approved the plans for the proposed undergrade crossing, and that no part of the cost of such proposed crossing has been assessed against the county.

This complaint sufficiently showed appellant's interest in the subject-matter of the action, and that it was entitled to equitable relief by way of an injunction to forbid the opening and construction of the new highway under its railroad tracks, and the cutting of the railroad embankment for that purpose, if the board of commissioners was without jurisdiction to order the improvement made, as appellant insists. But if the board of commissioners had jurisdiction and kept within

its jurisdiction in what it did, then appellant's remedy, if it has any, is something else than a suit for an injunction.

That the board of commissioners is a tribunal of limited jurisdiction, and that any acts done by it in excess of its jurisdiction are void, and will be so held 1, 2. even when collaterally called in question, is well established. *Doctor* v. *Hartman* (1881), 74 Ind. 221; *Helms* v. *Bell* (1900), 155 Ind. 502, 504, 58 N. E. 707; *Eads* v. *Kumley* (1918), 67 Ind. App. 361, 367, 119 N. E. 219; *Weaver* v. *Ferguson* (1917), 68 Ind. App. 169, 180, 117 N. E. 659. Any act of a board of commissioners not within the powers conferred upon it by statute is wholly void. *Hudson* v. *Voreis* (1893), 134 Ind. 642, 34 N. E. 503; *Eads* v. *Kumley, supra.*

The first question for consideration is whether or not a board of county commissioners has jurisdiction to order and establish an undergrade crossing 3. through a railroad embankment beneath the tracks of the railroad without the consent of the railroad company. If it has such power that power must have been conferred by some statute, or must necessarily be incident to the exercise of powers expressly so conferred. The board of commissioners is a creature of statutes and has no inherent powers not thus conferred. No statute has been pointed out to us, and we know of none, purporting to give a board of commissioners any power to determine what kind of crossing shall be made where a highway crosses a railroad. A statute provides that the railroad company may construct its road across any highway so as not to interfere with the free use of the same, but shall restore the highway, thus intersected, to its former state, or in a sufficient manner not unnecessarily to impair its usefullness. §5195, cl. 5, Burns 1914, §3903 R. S. 1881. And that whenever the track of such a railroad shall

cross a road or highway, such road or highway may be carried under or over the track, as may be most expedient.    §5249 Burns 1914, §3915 R. S. 1881.

If the discretion thus vested in the railroad company is abused, and the crossing provided by it is insufficient, the circuit court, being duly invoked by an action on the relation of an officer exercising supervision over the highway, may determine what kind of a crossing is necessary to restore the highway to a state of usefulness, and compel the railroad to build such a crossing.  *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189, 63 N. E. 224; *Baltimore, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 510, 65 N. E. 508.

There is also a statute which confers upon the Public Service Commission, as the successor of the Railroad Commission, the power to order the construction of undergrade or overhead crossings or to relocate grade crossings under certain circumstances.  §§5556d, 5556g Burns 1914, Acts 1913 p. 508, §§4, 7; *Wabash R. Co.* v. *Railroad Comm., etc.* (1911), 176 Ind. 428, 95 N. E. 673.

We cannot agree with the contention of counsel for the appellees that opening an underway crossing is a mere incident of the larger purpose of improving the highway.    There is a statute which gives the board power, on the filing of a proper petition by enough qualified persons and the giving of proper notice, to refer to viewers the matter of straightening and paving the highway, and to confirm their report as to those matters.    §7711a Burns' Supp. 1918, Acts 1915 p. 680; *Metsker* v. *Whitsell* (1914), 181 Ind. 126, 103 N. E. 1078.    But the statute only gave the railroad company the right, in the first instance, to choose the kind of crossing to be constructed, and its exercise of discretion in that regard could only be controlled by a court of superior jurisdiction in an action against the rail-

road company to compel it to perform its duty, until the Public Service Commission was vested with authority to order what should be done. So much of the report of the viewers and of the order of the board of commissioners as provided that an undergrade crossing should be cut through appellants' railroad embankment was clearly void.

The petition filed and the notice given, as above set out, said nothing about relocating any part of the highway sought to be improved, whether by way of straightening it, or for any other purpose. And the only description which they gave of the proposed improvement was that it should follow the course of certain existing highways from the beginning point to where the "Rees road" crosses the township line. That the highway was not relocated under the provisions of the general statute for locating, vacating and changing highways (§§7649-7668 Burns 1914, Acts 1905 p. 521) is obvious. But the statute which authorizes the construction of gravel roads less than three miles in length in one or more townships, by taxation gave the board of commissioners of Fayette county power to "lay out, establish and cause to be graded, drained and paved" any such new highway, or "to cause to be straightened, graded, drained and improved" any such highway already established, if such action was properly asked by fifty or more qualified petitioners, and a notice reciting the petition was duly published and posted. §§7711a, 7712 Burns' Supp. 1918, Acts 1915 p. 680, Acts 1915 p. 644; *Metsker* v. *Whitsell, supra.*

Aside from fixing the number and qualifications of the petitioners, which are admitted to be sufficient in the case at bar, so much of the statute as is pertinent to the questions under consideration provides as follows: "Whenever a *petition* \* \* \* *praying that*

*any public highway * * * shall be laid out,* established and improved by grading, draining and paving * * * or *that any public highway or highways already established* shall be graded, drained or paved * * * shall be addressed to the board of commissioners * * * and filed in the office of the auditor of such county, it shall be the duty of such auditor to cause to be published in a weekly newspaper * * * and to be posted * * * a notice setting forth the township * * * a description of the highway proposed to be improved, the term of court and the day upon which the same will be presented for the hearing before said board of commissioners * * *." (Our italics.) §7712 Burns' Supp. 1918, Acts 1915 p. 644, §4.

"The petition herein contemplated shall set forth the beginning, course and termination of each new highway or part of highway sought to be laid out, established, graded, drained and paved, and the beginning and termination and a general description of each public highway sought to be graded, paved and drained, together with a recommendation of the width of each such highway and of the character of the improvement to be made * * *." §7713 Burns 1914, Acts 1905 p. 521, §64.

If the petition is properly signed and is in due form and sufficient, or is made so by amendment, it shall be referred to two viewers and an engineer. §§7715, 7716 Burns 1914, Acts 1905 p. 521.

"When such engineer and viewers shall have taken the oath * * * they shall proceed, without delay, to view and make all needful surveys of the road or roads mentioned in the petition, and shall determine:

(a) Whether any proposed new highway or part of highway *described in the petition* will be of public utility:

(b) In respect to each separate highway or part of

highway *named in the petition* whether it will be of public utility to grade, drain and pave the same as therein prayed:

(c) The width of each highway or part of highway to be established or improved;

(d) The character of the improvement, including the grading, draining and paving, to be made of each highway *mentioned in the petition,* which they shall find to be of public utility, together with complete plans and specifications of each such improvement and of all bridges, culverts and waterways required therein:

(e) The estimated cost of each improvement to be made. And * * * shall file * * * their report in writing, signed by each of them, setting forth their determination in said matter in respect to each highway or proposed highway *mentioned in the petition,* including an accurate description of each *new highway* to be laid out, established, graded, drained and paved, and of each *public highway* to be graded, drained and paved, together with their recommendations in respect to the paving materials to be used in each instance, and complete plans and specifications for each improvement to be made, and the estimated cost of each such improvement, and such report shall be accompanied by an accurate profile of each highway or part of highway to be improved, showing * * * the elevation * * * and the changes to be made therein by excavation or filling * * *." §7717 Burns 1914, Acts 1905 p. 521, §68.

The "reports and profile made by engineer and viewers" shall be examined after matters of damages are disposed of, and if the board of commissioners shall approve the report, or shall modify it and approve it as amended, after they have accepted it they shall order an election, or, in the case of an improvement less than three miles in length, situated as this one was, "the

board of commissioners may, in their discretion, if they find *said petition otherwise complies with this act,* establish and order the construction of said road without submitting the question of building the same to an election &ast; &ast; &ast; Provided, that if, within &ast; &ast; &ast; (a time limited) there shall be filed &ast; &ast; &ast; a *remonstrance* signed by a *greater number* of the freeholders and voters of the township &ast; &ast; &ast; affected &ast; &ast; &ast; than *appear upon said petition* asking that said highway, three miles or less in length shall not be opened and improved or improved *as therein asked,* then said board of commissioners shall not order said road improved, and said petition shall be dismissed at the cost of the petitioners. But if no such remonstrance is filed, as above provided, said board may proceed to have said road constructed &ast; &ast; &ast;." §7719 Burns' Supp. 1918, Acts 1915 p. 644.

The substance of the foregoing statutory provisions is that the questions what improvement shall be made, and whether along an existing highway or along

4. the line of a new one laid out and established for that purpose, is exclusively for determination by the qualified freeholders and voters of the township or townships affected; that jurisdiction is conferred by filing a petition signed by the required number of qualified freeholders and voters, and may be taken away by an adverse vote of the legal voters of the township, or in the case of improvements not submitted to a vote, by the remonstrance of a sufficient number of freeholders and voters affected. And that neither the viewers nor the board of commissioners has any power to lay out, establish or construct any improvement except as petitioned for by a sufficient number of properly qualified freeholders who are voters.

No question is presented in this case as to the power of the viewers to depart slightly from the line of the

existing highway, so as to straighten a bend in the road, even though the petition did not mention relocating or straightening it as one of the purposes of the proceeding. The changes of that character are not complained of and as to them we decide nothing. Neither is any question involved as to their power to depart from the line of the existing highway on the lands of an owner who consents to the change, where it does not affect the rights of others, and does not involve the relocation of a railroad crossing that has not been ordered or approved by the Public Service Commission and as to such questions we decide nothing. But the petition in the case at bar gave the board no jurisdiction to do what was attempted here without the consent of the railroad company.

What we have said is illustrated by the accompanying plat.

Obviously, one real purpose of this proceeding was to establish a crossing where the highway would pass under the railroad track, instead of going over it at grade. In the absence of any petition by anybody for such a relocation of the highway the viewers had no authority to lay out the highway improvement on such new route, and the board of commissioners was without jurisdiction to order the highway established and opened at the place of the pro-

posed undergrade crossing, without the consent of the railroad company, and without an order of the Public Service Commission.

The board of commissioners being without jurisdiction to order the highway opened on an undergrade crossing made at the new location west of the station, its order was void, and persons threatening to cut appellant's railroad track and embankment in obedience to the order might be restrained by injunction.

The judgment is reversed, with directions to overrule the demurrer of appellees to appellant's complaint.