Hays Christmas and others filed in the office of the auditor of Gibson county a petition addressed to the board of commissioners praying for the improvement of a certain highway in said county, under what is known as the County Unit Road Law; the statutory notices were given; approval of the petition was made by the county council; an engineer was appointed to prepare plans and specifications; and all proceedings required by the law were observed and followed.
It is shown that said highway crossed appellants' railroad tracks and right of way at grade. The report of the engineer disclosed that a slight change was made in the highway at the railroad crossing, and a recommendation was made that said grade crossing be separated. Thereupon, the board of commissioners of said county, on the 3rd day of August, 1927, filed a petition with the Public Service Commission of Indiana praying for an order requiring the separation of said grade crossing by building an overhead bridge over the railroad tracks at said point, and that the cost thereof be *Page 76 
apportioned between the county and the railroads as provided by statute. The appellants were duly notified of the filing of said petition, and when and where it would be heard.
The hearing was had August 15, 1927, and on August 19, 1927, the Public Service Commission made its finding and order upon said petition. Among other things it was found that the improvement of the highway had been duly petitioned for and approved by the county council of said county; that the highway to be improved was to be constructed over the railroad tracks of the appellants; that the petition prayed that the grade of said highway and said railroads be separated; and that the cost of building the highway over the railroad tracks be apportioned between the respective parties. The commission found that at the point where the highway crossed the railroad tracks, a cut approximately twelve feet in depth was necessary for the highway to cross the railroad tracks at grade; that "on account of the depth of such cut it was impracticable to lower the said highway to grade, and that by reason thereof an overhead bridge crossing the said railroad tracks should be built for the purpose of carrying the said highway over same"; that plans and specifications had been prepared for said overhead bridge, which provided for a bridge 116 feet in length and 21 feet in height; that the appellants "made no objection to the said grade being separated and such overhead bridge being built, except that the railroad companies showed that the length of the said wooden bridge should be increased from one hundred and sixteen (116) feet to one hundred and eighteen (118) feet and the height increased from twenty-one (21) feet to twenty-two (22) feet."
The commission further found that "public convenience and necessity required that said grade should be separated and said bridge constructed as quickly as *Page 77 
possible for the reason that the evidence showed that said highway is one which is largely used and will be more generally used after said bridge is constructed."
Upon said findings the Public Service Commission made an order that said grade crossing be separated by an overhead bridge 118 feet long and 22 feet high; that the engineer in the Hays Christmas et al. County Unit Road prepare revised plans and specifications in conformity to this order for said proposed overhead bridge, to be in all particulars similar to the original plans except as to the change in the length and height of the bridge, and file the same as quickly as may be done as part of the record in the cause. It is further ordered by the commission that the cost of building said overhead bridge should be paid one-fourth by Gibson county and three-fourths by the appellants.
Afterwards, on September 6, 1927, the appellants filed with the Public Service Commission a petition for rehearing in which it is shown that the appellant Cleveland, Cincinnati, Chicago and St. Louis Railway Company did not own the right of way over which the highway crossed, but that said right of way had been sold and conveyed to the appellant Evansville, Indianapolis and Terre Haute Railroad Company, which was the sole owner thereof. Other grounds for a rehearing were that the commission erred in finding that on account of the topography at the point of the crossing, it was impracticable to lower the highway to the grade of the railroad; that the commission erred in holding that the railroad companies made no objection to the grade being separated and to the proposed overhead bridge; that it erred in holding that public convenience and necessity required that the grade be separated; and that the commission erred in apportioning the cost of said construction, one-fourth to Gibson county and three-fourths to the appellants. *Page 78 
Upon a consideration of the motion for a rehearing, the commission modified its original order, and provided that it should not apply to the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, for the reason that the title of the right of way at said crossing was then in the appellant Evansville, Indianapolis and Terre Haute Railroad Company. In all other respects the original order was reaffirmed. The foregoing order was made and entered by the commission December 30, 1927.
On January 28, 1928, the appellant filed with the Public Service Commission its notice of an appeal to the Gibson Circuit Court. The right to appeal is not questioned. Thereupon a transcript of the proceedings before the Public Service Commission was transmitted to that court. The venue of the cause was changed to the Knox Circuit Court, where the same was tried before the court de novo, and at the request of both parties, special findings of facts and conclusions of law were made.
The special findings recited in detail all the proceedings had before the board of commissioners and the Public Service Commission, including petitions, notices, plans and specifications, and orders. Included in the findings is the following:
"That the said railroad companies made no objection to the said grade being separated and such overhead bridge being built, except that the railroad companies showed that the length"
be changed from 116 feet to 118 feet and the height from 21 feet to 22 feet. The findings further stated:
"That public convenience and necessity required that said grade should be separated and said bridge constructed as quickly as possible for the reason that the evidence showed that said highway is one which is largely used and will be more generally used after said bridge is constructed." *Page 79 
That the engineer in charge prepare revised plans and specifications for the proposed overhead bridge so as to conform to the order of the commission.
The court then found that pursuant to said order, the engineer in charge prepared plans and specifications which were duly filed; notices of the letting of a contract for the construction of the bridge were published; and on October 4, 1927, the board of commissioners let a contract for its construction for the sum of $3,650.
Finding number 17 is as follows:
"The Court finds that each and every step necessary to the legal establishment of said improved highway was taken by said Board of Commissioners, and that said highway, as described in the report of the engineer and viewers, which report is set forth in finding number six (6) of this special finding, was of public utility."
The court made a further finding as to the embankment at the railroad crossing and the necessity of the separation of the grade crossing; that at the time of the hearing of the proceeding before the Public Service Commission, many travelers used the highway crossing over the railroad tracks; that the overhead crossing provided for by the Public Service Commission was of the proper length and height; that it was practicable to separate said grades; that pursuant to the order of the Public Service Commission, the board of commissioners had constructed the overhead bridge prior to the trial in the Knox Circuit Court.
It was further found that no appeal was taken from any of the orders of the board of commissioners of Gibson county; that the board had complete jurisdiction thereof; that the contract to construct the bridge had not been let at the time the board of commissioners filed its petition with the Public Service Commission praying for a separation of the grade and apportioning the cost thereof, but the same was constructed pursuant to the order of the commission. *Page 80 
Finding number 24 is to the effect that the Public Service Commission had jurisdiction of the parties and of the matters pertaining to said separation at the time the same was heard, and finding number 26 is that the Public Service Commission heard and determined the matters set forth in the petition of the board of commissioners, "and was satisfied that said crossing mentioned in said petition was dangerous to life and that the safety and accommodation of the public required that the grade thereof should be separated."
As conclusions of law the court stated: (1) That the law is with the Board of Commissioners of Gibson County, Indiana, and (2) that the Board of Commissioners of Gibson County, Indiana, should recover its costs herein laid out and expended.
Thereupon, final judgment was rendered ordering that the grade crossing of said highway and the right of way of the Evansville, Indianapolis and Terre Haute Railroad Company be separated as described in the order of the Public Service Commission; that Gibson county pay one-fourth and the railroad company three-fourths of the cost of said separation. The appellant excepted to the conclusions of law stated by the court.
By excepting to the conclusions of law upon the facts found, the appellant admitted for the purpose of the exception that the facts were correctly found. Barney v. Yazoo, etc., Land
1. Co. (1913), 179 Ind. 337, 101 N.E. 96; Ray v. Baker
(1905), 165 Ind. 74, 74 N.E. 619.
It is first contended by appellant that there is no statute in this state under which the Public Service Commission was authorized to make the order and that it had no 2. jurisdiction of the matter involved. Chapter 182 of the Acts of 1913, which embraces Sections 12838 to 12847, inclusive, Burns 1926, being *Page 81 
Sections 55-1801 to 55-1809, inclusive, Burns 1933 (§§ 15485-15494, Baldwin's 1934), gives the commission full authority to separate grade crossings, and provides the manner and the procedure therein. It also provides that where the grade crossings are separated, three-fourths of the cost shall be borne by the railroad company and one-fourth by the county. The authority first granted to the Railroad Commission was transferred by this Act to the Public Service Commission.McCardle v. Board, etc. (1924), 195 Ind. 281, 144 N.E. 877.
It is held in Cincinnati, etc., R. Co. v. Board, etc.
(1922), 192 Ind. 1, 134 N.E. 782, that the foregoing statute conferred the power upon the Public Service Commission to construct undergrade and overhead crossings and to relocate grade crossings, under certain circumstances.
The appellant contends that the record shows that the board of commissioners of Gibson county varied slightly from the route of the old highway at the point where it crosses the railroad right of way, and for this reason it claims that the board of commissioners was without jurisdiction. However, the statute authorizes the board of commissioners, with the approval of the Public Service Commission, to make changes in the highway and right of way grade crossings where public convenience and safety require it to be done. It is clear, under the statute and the decisions of this court, the Public Service Commission possesses ample power to do the acts and make the order as shown in this proceeding.
The statute expressly authorizes the Public Service Commission to separate grade crossings, and provides that upon the separation being made the railroad company shall pay three-fourths of the cost and the county one-fourth, and as said in Cincinnati, etc., R. Co. v. City of Connersville (1908),170 Ind. 316, 320, 322, 83 N.E. 503: *Page 82 
"It (railway company) was bound to take notice that the right of the people to establish and maintain public highways . . . whether laid out before or after the railroad it should be the duty of the company to construct and maintain the crossing in such condition as will render it suitable and reasonably safe . . . They (railroads) enjoy, as grants from the people, superior rights to go where they please, and as fast as they please, subject to the duties that are constantly being imposed upon them, having reference to the safety of persons and property. . . .
"The same principle applies with equal vigor to highway crossings. There is probably more human life and property destroyed from collision with trains at railroad crossings than from all other railroad accidents combined. It is evident that a high degree of care to avoid accidents at crossings is of first importance. And there are reasons why railroad companies should be charged with the duty of constructing and maintaining all such crossings in a suitable and safe condition. In the first place, their right to traverse the country on private property is subject to the right of the people to construct highways for their own convenience across the same country and the railroad, whenever it becomes necessary. . . . In the second place, the peculiar danger at the crossings is all created by the railroads. . . . However, the legislature deemed it expedient to enact § 5195, supra, which, under the interpretation given it by this court, requires a railroad company, at its own expense, to do whatever the conditions present at each particular place require to be done to render the crossing suitable and reasonably safe, `or in a sufficient manner not to unnecessarily impair the usefulness' of the highway, `or to interfere with the free use of the same,' and `in such manner as to afford security for life and property.'"
See Baltimore, etc., R. Co. v. State ex rel. Greenwood
(1902), 159 Ind. 510, 519, 65 N.E. 508.
The power exercised by the Public Service Commission, under the law, is a valid exercise of the police power of the state.
The above opinion of this court just quoted from was *Page 83 
handed down in 1908. More reasons exist today for separation of grade crossings than at that date, due to the fact that we now have improved, hard-surfaced highways, and thousands of automobiles using the roads constantly. Greater caution should be exercised to make such traveling as safe for the public as is possible. The special finding of facts discloses that the highway in question was much traveled, and would be traveled more after the separation of the grade crossing, and that the separation would be of public utility.
The appellant makes complaint of the fact that the board let the contract for the construction of the overhead bridge immediately following the order of the Public Service 3. Commission, and paid for the same before the cause was finally determined in the Knox Circuit Court. It will be noted that this is not an appeal from a judgment to recover the costs of the construction, but is an appeal from the Knox Circuit Court confirming the decision of the Public Service Commission in making an order that the crossing be separated, and that the expenses be paid one-fourth by the county and three-fourths by the railroad company. The question of the manner and method of making the payment or collecting the same is not before the court.
From a careful consideration of the case, it appears that the trial court committed no error, and that the judgment should be affirmed.
Judgment affirmed.